Estate of Alice G. K. Kleberg, Deceased (R. M. Kleberg and Robert J. Kleberg, Jr., Executors) v. Commissioner.
Estate of Alice G. K. Kleberg, Deceased v. Commissioner
Docket No. 9258.
United States Tax Court
1946 Tax Ct. Memo LEXIS 60; 5 T.C.M. (CCH) 858; T.C.M. (RIA) 46242; October 14, 1946
*60 Leroy G. Denman, Esq., 215 W. Commerce St., San Antonio 5, Texas, for the petitioners. Allen T. Akin, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: The Commissioner determined a deficiency in the income tax return of the estate of Alice G. K. Kleberg, deceased, for the year 1941 in the amount of $2,423.93. The one item making up this deficiency which remains to be determined is as to whether or not net income in the amount of $1,433.47 received from the sale of certain lots is to be regarded as long term capital gain or as income received in the course of trade or business. Findings of Fact Alice G. K. Kleberg died a resident of Kleberg County, Texas, in July, 1944. R. M. Kleberg and R. J. Kleberg, Jr., are the duly appointed and acting executors under her will, with a post office address in Kingsville, Kleberg County, Texas. Robert J. Kleberg (Sr.), died in October 1932, devising and bequeathing all of his property to his wife, Alice G. K. Kleberg, and naming her as executrix and his two sons, R. M. Kleberg and Robert J. Kleberg, Jr., as advisory executors. At the time of his death Robert J. Kleberg, Sr., owned a *61 half interest in certain lots in Corpus Christi. He also owned 33 shares of stock in the Kingsville Land and Improvement Co., the remaining shares therein being owned as follows: Caesar Kleberg, Jr.
34 shares
Lorian Flato
33 shares
The entire assets of the Kingsville Land and Improvement Co. consisted of lots in the town of Kingsville and certain acreage in Kleberg County of a total appraised value of $12,832.50 in the year 1935. At some time prior to 1927 the Kingsville Land and Improvement Co. had borrowed $155,000 and its note for that amount was endorsed by Caesar Kleberg and Robert J. Kleberg, Sr. These notes were still outstanding at the time of the death of Robert J. Kleberg, Sr., in 1932. During 1935 Robert J. Kleberg's executors and Caesar Kleberg paid the note, one-half being paid by each. Thereafter, on December 11, 1935, the Kingsville Land and Improvement Co., by deed, transferred all of its real estate to the estate of Robert J. Kleberg, Sr., deceased, and to Caesar J. Kleberg at a stipulated valuation of $12,832.50. The consideration for this transfer was declared to be "by the credit by the grantees upon indebtedness owed by the grantor on *62 the said sum." On March 12, 1936, Caesar Kleberg conveyed his one-half undivided interest in said real estate to Alice G. K. Kleberg, executrix of the estate of Robert J. Kleberg, deceased, for the sum of $6,416.25. The property acquired from Kingsville Land and Improvement Co. had been subdivided prior to the time it was deeded to Alice G. K. Kleberg, executrix. Of this property Mrs. Kleberg, in 1936, sold 13 lots. In 1940 she sold 17 lots and 400 acres of the Kleberg County property. During 1941 Mrs. Kleberg sold 35 lots of the property acquired from the Kingsville Land and Improvement Co., 14 lots which she had acquired from another source, and she joined in deeds to 5 lots in Corpus Christi in which her deceased husband had owned a half interest. The net profit on the sale of these lots in 1941 was $1,433.47, which by agreement of the parties constitutes income to Alice G. K. Kleberg personally, taxable either as long term capital gain or as income received in course of trade or business. One F. Frome, a bookkeeper for the King Ranch, acted as agent for R. J. Kleberg, Jr., advisory executor, and Alice G. K. Kleberg in the sale of these lots. Neither F. Frome, Alice G. K. *63 Kleberg nor R. J. Kleberg, Jr., had any license as a real estate dealer. No commissions were paid or received by any one connected with these sales. No regular inventory was ever kept of this real estate by the taxpayer except to the extent that when a lot was sold it was so marked on the taxpayer's records. The lots were never advertised for sale and the plats were in no way improved by the taxpayer. Such sales as were made occurred when someone desiring to buy a lot would express to F. Frome his desire to purchase, Frome would ask the prospective purchaser for a bid price and would later tell the purchaser either that the price was satisfactory or the lots were not for sale. No other effort was made to sell these lots and the only act performed by the taxpayer in relation to this real estate was to pay taxes thereon and to sign deeds therefor when a sale was made and a deed presented by Frome to Mrs. Kleberg. During the taxable year the estate of R. J. Kleberg was engaged in the lumber business, primarily to sell lumber to the King Ranch. The sales of real estate by Alice G. K. Kleberg, which came into her possession as devisee of Robert J. Kleberg, Sr., deceased, were not made *64 in the ordinary course of trade or business of the estate of Alice G. K. Kleberg and the profits therefrom constitute a long term capital gain. Opinion We are unable to sustain respondent's contention that the lots which were sold in the taxable year 1941 by Alice G. K. Kleberg were sold in the regular course of trade or business by the taxpayer. The acquirement of title to this real estate, the manner in which it was handled while owned by the taxpayer, the nature of the sales and the general character of the taxpayer's business all point to the fact that these sales did not constitute any part of the trade or business of this taxpayer. This taxpayer performed but two functions in relation to this real estate. She paid taxes thereon, which, of course, was necessary in order for her to continue to have title, and she signed necessary deeds thereto. If these two acts alone could place the taxpayer in the real estate business, then it would be most difficult to conceive of a situation whereby the sale of real estate could result in a long term capital gain or loss. The mere fact that the taxpayer inherited this property, standing by itself, of course, would not preclude the property *65 from becoming a factor in the taxpayer's trade or business. In , the taxpayer inherited real estate and sold 800 acres thereof for $4,052,000 in 1929, but repurchased the same at a trustees sale in 1934. Thereafter the taxpayer completed platting activities instituted by the former owner and installed streets, sidewalks and landscaping. He employed an agent to deliver deeds and make collections. His selling agent was paid a commission on the sales. The court held that the mere fact he had originally inherited the property was not controlling when other facts indicated that he developed and sold the property as a trade or business. Furthermore, the fact that the taxpayer did not personally handle the sales, standing alone, would not establish that the sales were not made in her regular trade or business. This was held in the case of and also . However, as in the Ehrman case, the facts in the Richards and Solomon cases are easily distinguishable from the case at bar. The fact also that the sales by the taxpayer were not continuous, *66 there being three years in which no sales were made at all, would not be conclusive in favor of this taxpayer. But, when all of the facts set forth in the findings of fact herein are considered, we are unable to find that the sale of this property inherited from the taxpayer's deceased husband could constitute any portion of Alice G. K. Kleberg's trade or business. As was said by the Board of Tax Appeals in the case of (where the sole owner of a corporation which was engaged in the real estate business, acquired all of the land of the corporation for prompt disposal so as to liquidate the corporation): Thereupon he proceeded to sell the land as expeditiously and advantageously as possible. He did not attempt personally to continue the real estate business. His purpose was to extract from the investment whatever profit, if any, such sales might bring but his primary motive was to dispose of the real estate as soon as possible and to convert the proceeds thereof into cash and other less burdensome forms of wealth. In the above case the Board of Tax Appeals held that the sales by the taxpayer were capital gains and not ordinary income. *67 That case is not nearly as favorable to the taxpayer as is the case at bar because in the Peck case the taxpayer had originally, through his corporate alter ego, acquired the lots for sale in the course of trade or business. In the case at bar the taxpayer acquired the lots through the exigencies of the death of her husband. It is therefore our judgment that the income from these sales made in 1941 is taxable to the petitioner as long term capital gain. Judgment will be entered for the petitioner.